UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

In the Matter of the Arbitration between

Akin Bay Company LLC,

                      Petitioner

     and

Cornerstone Strategic Management
Limited and Cornerstone Overseas
Investments Limited,

                  Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

**07 CV 7170**

No. _____ Judge Sullivan

PETITION



Petitioner Akin Bay Company LLC ("Akin Bay"), by its attorneys, Robinson &

McDonald LLP, as and for its Petition herein, petitions the Court for an order, pursuant to 9

U.S.C. §9, 13 confirming the interim awards of the arbitrator dated April 20, 2007 and July 13,

2007 in the matter of the arbitration entitled Akin Bay Company LLC against Cornerstone

Overseas Investment Limited and Cornerstone Strategic Management Limited, American

Arbitration Association ("AAA") Case No. 50 435 T 00214 06, and directing that judgment be

entered accordingly.  This petition is made on the following grounds:

        1.    Akin Bay is, and was at all relevant times, a limited liability corporation

organized under the laws of the State of New York, with its principal place of business located at

780 Third Avenue, New York, New York 10017-2024.

        2.    Respondents Cornerstone Strategic Management Limited ("CSML") and

Cornerstone Overseas Investment Limited ("COIL") are, and were at all relevant times, limited

companies organized under the laws of the British Virgin Islands, with their principal place of

business located at Room 202, Chinachem Global Plaza, 77 Mody Road, Tsimshatsui East

Kowloon, Hong Kong.

       3.      The jurisdiction of this Court is based on 28 U.S.C. §1332 (diversity of

citizenship) and 9 U.S.C. §9 (the Federal Arbitration Act). The amount in controversy, exclusive

of interest and costs, exceeds $75,000.

       4.      On or about November 21, 2005, Akin Bay, on the one hand, and CSML and

COIL, on the other, entered into a written contract whereby Petitioner agreed to provide certain

investment banking and financial advisory services in connection with the purchase of a

company called Wham-O, Inc., and Respondents agreed to pay for such services (the "Wham-O

Agreement"). A copy of the Wham-O Agreement is attached hereto, and incorporated by

reference herein, as Exhibit A.

       5.      On or about April 1, 2004, Akin Bay and COIL entered into a separate written

contract for the provision of investment banking and financial advisory services, and COIL

agreed to pay for such services (the "April 1 Agreement"). A copy of the April 1 Agreement is

attached hereto, and incorporated by reference herein, as Exhibit B.

       6.      The Wham-O and April 1 Agreements (collectively the "Agreements")

evidence transactions involving commerce within the meaning of 9 U.S.C. §§1, 2, in that both

Agreements provided for services to be rendered to foreign companies in connection with actual

or potential mergers and acquisitions and/or financing transactions in interstate or international

commerce (and financial advisory services related thereto), including the purchase by a British

Virgin Islands Company of Wham-O, Inc., a company organized under the laws of Delaware.

7.      Both the Wham-O Agreement and the April 1 Agreement contain arbitration clauses which, <u>inter alia</u>, specify that "judgment on any award by the arbitrator[] may be entered in any court having jurisdiction thereof." Exs. A and B, Section 8.

8.      Differences arose between Akin Bay and Respondents because Respondents failed to pay the fees and expenses required to be paid to Akin Bay under the Agreements.

9.      Pursuant to the arbitration clauses of the Agreements, the parties submitted the dispute to arbitration before the AAA, with Robert B. Davidson being appointed the sole arbitrator by agreement of the parties.  This arbitration is entitled Akin Bay Company LLC against Cornerstone Overseas Investment Limited and Cornerstone Strategic Management Limited, Case No. 50 435 T 00214 06 (the "Arbitration").  The Arbitration is located in the City, County and State of New York.

10.     In the Arbitration Akin Bay contended that both Agreements required Respondents to pay all of Akin Bay's expenses, including reasonable attorneys' fees ("Expenses"), in connection with the Arbitration as such Expenses were incurred during the course of the Arbitration.  Respondents opposed this contention.

11.     In connection with its contention regarding ongoing Expenses, Akin Bay made applications in the Arbitration for an order with respect to both Agreements requiring that Akin Bay's Expenses in the Arbitration be paid by Respondents as they are incurred.

12.     On April 20 and July 13, 2007, after receiving written submissions from the parties and after hearing oral argument of counsel for the parties, and after considering the provisions of the Agreements, the Arbitrator granted Akin Bay's applications.

13.    On or about April 20, 2007, the Arbitrator granted Akin Bay's application with respect to the April 1 Agreement, and ruled that: "Respondents are ordered to reimburse Akin Bay's reasonable counsel fees in this arbitration proceeding." The interim award with respect to the April 1, 2004 letter agreement is attached hereto as Exhibit C.

14.    On or about July 13, 2007, the Arbitrator also granted Akin Bay's application with respect to the Wham-O Agreement, and ruled that: "Respondents are ordered to reimburse Akin Bay's reasonable counsel fees for the prosecution of its claims under the Wham-O Agreement as this arbitration proceeds." The interim award with respect to the Wham-O Agreement is attached hereto as Exhibit D.  (The two interim awards are collectively referred to as the "Interim Awards").

15.    There was no way to preserve Akin Bay's contractual rights to be paid the Expenses of the Arbitration "as they are incurred" (see Exs. A and B, Schedule 1, second paragraph, last sentence), without the granting of the Interim Awards.

16.    With respect to the issue of whether Akin Bay is entitled to be paid its Expenses as they are incurred throughout the course of the Arbitration, the Arbitrator's decision is final.

17.    Contrary to the Interim Awards, and despite demand therefor, to date Respondents have not paid all Akin Bay's reasonable Expenses.

18.    As of August 10, 2007, Akin Bay was owed approximately $113,282 in respect of the Interim Awards. Akin Bay's correspondence with Respondents' counsel demanding payment is attached hereto as Exhibit E.

19.     This application is based on the aforementioned Agreements and Interim Awards, all of which are attached hereto.

WHEREFORE, Akin Bay seeks:

1.     An order confirming the Interim Awards -- to wit, that Respondents must pay Akin Bay's ongoing Expenses in the Arbitration as they are incurred.

2.     An order and entry of judgment for $113,282, plus pre-judgment interest at the New York statutory rate of 9% from the time each of Akin Bay's Expenses were incurred.

3.     Costs and expenses, including reasonable attorneys' fees, of this proceeding pursuant to Schedule 1 of each of the attached Agreements.

Dated: New York, New York
       August 10, 2007

ROBINSON & McDONALD LLP

By: _____
    K. Ann McDonald (KAM-2876)

61 Broadway, Suite 1415
New York, New York  10006
Tel.: (212) 953-3400

Attorneys for Plaintiff Akin Bay Company LLC

Exhibit A

**THIS AGREEMENT** is made on the ___21st___ day of ___November___  2005.

**BETWEEN**

**CORNERSTONE STRATEGIC MANAGEMENT LIMITED** ("Cornerstone"), a company incorporated in the British Virgin Islands with its principal place of business at UG2nd floor, Chinachem Golden Plaza, 77 Mody Road, Tsimshatsui, Kowloon, Hong Kong, a private company incorporated in the British Virgin Islands wholly owned by Mr. Hsieh Cheng Jeff; and

**AKIN BAY COMPANY LLC** ("Akin Bay "), a limited liability company incorporated in the State of New York, United States of America, and a member of the National Association of Securities Dealers Inc with its principal place of business at 780 3rd Avenue, New York, 10017-2024, United States of America.

**DEFINTIONS FOR THE TERMS IN THIS AGREEMENT**

| | |
|---|---|
| Affiliate | An Affiliate of any person, firm or corporation (a "Person") is a Person which controls, is controlled by, or is under common control with, such Person. |
| Actual Completion Price | The actual price paid by Cornerstone (or any of its Affiliates), in cash, in assumption of indebtedness, or otherwise, at Completion in connection with either the Asset Purchase or the Stock Purchase. |
| Asset Purchase | Acquisition of substantially all of the assets of Wham-O. |
| COIL | Cornerstone Overseas Investments Limited, a private company incorporated in the British Virgin Islands  wholly owned by Mr. Hsieh Cheng Jeff |
| Completion | Completion of either the Asset Purchase or the Stock Purchase, as applicable. |
| Engagement | The engagement of Akin Bay by Cornerstone in connection with the Transaction under this agreement. |
| Fixed Amount | The amount of US $400,000 to be paid in accordance with section 3.1(a). |
| Management Shareholders | The Management shareholders of Wham-O as at the date of this agreement listed on Schedule II to this agreement |
| Reduction Fee | A fee in an amount equal to US$100,000.00 for each US$1.0 million amount of the difference between the Actual Completion Price and the Target Price, to be paid by Cornerstone to Akin Bay as set out in Section 3.1(c), provided that the Actual Completion Price is less than the Target Price. |
| Stock Purchase | Acquisition of 100% of the Capital Stock of Wham-O by Cornerstone (or its affiliate). |

- 1 -

| | |
|---|---|
| Success Fee | Means the amount of US $725,000 to be paid by Cornerstone to Akin Bay at Completion in accordance with Section 3.1(b). |
| Target Price | Means the target price of US $22,000,000 for completion of either the Stock Purchase or the Asset Purchase. |
| Transaction | The investigation, structuring, negotiating, execution and completion of the purchase of Wham-O either by Asset Purchase or Stock Purchase including advising Cornerstone in connection with structuring the form, terms and conditions of Cornerstone's (or of one or more of its Affiliates) investment in Wham-O. |
| Union Bank | Union Bank of California, N.A. with its principal place of business at 400 California Street, San Francisco, CA 94104, United States of America |
| Wham-O | Wham-O inc., a company incorporated in the State of California, United States of America |
| Wham-O Debt | The existing debt that Wham-O has with Union Bank in the amount of at least US $22,000,000. |

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound, agree as follows.

1.    SCOPE OF ENGAGEMENT

Cornerstone hereby engages Akin Bay for the Transaction, either by Stock Purchase or Asset Purchase (and subject, in each case, to such liabilities as Cornerstone may elect to assume), to advise Cornerstone in connection with the restructuring of the Wham-O Debt and assisting with structuring the form, terms and conditions of Cornerstone's (or one or more of its Affiliates) investment in Wham-O.

2.    ENGAGEMENT PERIOD

2.1    On the terms and subject to the conditions of this Agreement, Cornerstone hereby retains Akin Bay to act, for a period beginning on the date of this Agreement and ending on the date ninety (90) days from the date of this Agreement (as such period may be extended as provided herein, the "Term"), as Cornerstone's exclusive agent and investment banker in connection with the Transaction. Cornerstone recognizes that: (1) in performing these services, Akin Bay will be using and relying upon such information concerning Wham-O or Cornerstone as may be required to be furnished to it or approved by Wham-O or Cornerstone (collectively, the "Information"); (2) Akin Bay will not assume responsibility for the accuracy or completeness of the Information; and (3) Akin Bay will not undertake to verify the information independently.

2.2    The Term of this Agreement shall be subject to extension subsequent to the expiration or earlier termination of the Term (or of any such extension thereof) upon mutual agreement, for one or more consecutive periods of 90 days or any mutually agreed lesser period.

3.    FEES

3.1    In consideration of the services to be provided by Akin Bay under the Agreement, the Company agrees to compensate Akin Bay as follows:

    (a)    Upon the signing of this Agreement, Cornerstone will become obligated to pay to Akin Bay the Fixed Amount, payable in equal consecutive monthly instalments of US $133,333 (the "Monthly Fixed Fee"). The first installment of the Monthly Fixed Fee shall be paid upon the execution of this Agreement and the further installments shall be paid on each succeeding consecutive monthly anniversary of the date of this Agreement and in accordance with the following further conditions: (i) Payments of the Monthly Fixed Fee shall not be refundable, nor creditable against any other monetary obligations of Cornerstone to Akin Bay under this Agreement; (ii) Cornerstone may at any time after the payment of the first Monthly Fixed Fee terminate this Agreement by notice in writing to Akin Bay, and such notice, subject to all the other terms of this Agreement, shall relieve Cornerstone of any obligations in respect of further Fixed Monthly Fees or the Fixed Amount after the date of such notice; and (iii) if Completion takes place before the payment of the third Monthly Fixed Fee, Akin Bay shall nevertheless be paid the full amount of the Fixed Amount on the date of Completion, less any installments thereof previously paid.

    (b)    Upon successful Completion Cornerstone will pay to Akin Bay in cash, at Completion, an amount equal to the Success Fee.

    (c)    Upon successful Completion, if the Actual Completion Price is less than the Target Price, then at Completion Cornerstone shall pay to Akin Bay the Reduction Fee.

3.2    Upon termination of this Agreement, the foregoing fees shall nevertheless be or remain payable to Akin Bay in accordance with the provisions of Section 6.

4.    EXPENSES IN RESPECT OF THE ENAGEMENT

Cornerstone shall have no obligation to reimburse Akin Bay for any of Akin Bay's out-of-pocket expenses incurred in connection with the Engagement or any other services rendered to Cornerstone under this Agreement.

5.    INDEMNIFICATION

Cornerstone hereby agrees to indemnify Akin Bay with respect to liabilities arising out of or in connection with the Engagement and the services rendered by Akin Bay hereunder on the basis set forth in Schedule I attached hereto. At any time after the date of this Agreement, Cornerstone may elect to offer to Akin Bay, as a substitute for Cornerstone's obligations under this Section 5, a policy of insurance issued at Cornerstone's expense by an internationally recognized insurer of appropriate financial standing and having an office in the United States of America, naming Akin Bay as the insured thereunder, and otherwise reasonably satisfactory in form and substance to Akin Bay, covering from the date of this Agreement the liabilities against which Akin Bay is indemnified under this Section 5, and if Akin Bay acting reasonably accepts such insurance coverage as a substitute for Cornerstone's indemnification hereunder, Cornerstone shall thereafter be fully and completely relieved of liability to Akin Bay under this Section 5.

6.    TERMINATION OF ENGAGEMENT

- 3 -

6.1    The Engagement hereunder may be terminated by Cornerstone or Akin Bay at any time, with cause, upon (10) days written notice to the other party; provided, however, that the provisions of Section 4 and 5 shall survive any such termination; and provided, further, that Akin Bay shall, notwithstanding such termination, be entitled to so much of its Fixed Fees and other compensation under Section 3 hereof as shall have been earned or shall have become payable in accordance with the terms hereof prior to such termination.

6.2    The engagement hereunder maybe terminated by Akin Bay or Cornerstone, without cause, at any time on not less than thirty (30) days advance written notice; provided , however, that the provisions of Sections 4 and 5 shall survive any such termination, and that Akin Bay shall be entitled to so much of its Fixed Fees and other compensation under Section 3 hereof as shall have been earned or shall have become payable in accordance with the terms hereof prior to such termination; and provided, further, that Akin Bay shall be entitled to its full fees due under Section 3 if at any time within twelve (12) months after such termination Completion occurs. In any such instance the amount of any fees determined under Section 3 and due to Akin Bay pursuant to the preceding sentence shall be the same as if the transaction in respect of which that fee is due had occurred during the course of the Engagement and as if Akin Bay had acted as Cornerstone's exclusive agent in the negotiation and accomplishment of the Transaction.

7.     SERVICES FOR THE BENEFIT OF CORNERSTONE ONLY; CONFIDENTIALITY

7.1    Cornerstone understands and agrees that all advice (written or oral) given by Akin Bay to Cornerstone in connection with the engagement hereunder is intended solely for the benefit and use of Cornerstone (or its Affiliates), and that no such advice shall be used, reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose, nor shall any public reference be made to Akin Bay, except with Akin Bay's prior written consent.

7.2    All confidential information relating to the business, operation, financial position, intellectual property and otherwise of Cornerstone and its shareholders, principals, members and Affiliates (the "Confidential Information") disclosed to Akin Bay pursuant to or in connection with the transactions contemplated by this Agreement shall be treated by Akin Bay with such degree of care as is routinely used by Akin Bay with respect to its own internal sensitive business and financial information of similar importance, and shall be used by Akin Bay only for the purposes of this Agreement, except to the extent that, with the written approval of Cornerstone, it is necessary that certain of such Confidential Information be incorporated in appropriate and necessary disclosures concerning Cornerstone's business in connection with the matters undertaken by Akin Bay under Section 1.

8.     GOVERNING LAW AND RESOLUTION OF DISPUTES; CONSENT TO JURISDICTION

8.1    This Agreement shall be construed in accordance with and governed by the laws of the State of New York. Any disputes between the parties hereto arising out of or relating to this Agreement or the breach hereof, other than any dispute with respect to Akin Bay's rights under Section 5 of this Agreement, shall be settled by an arbitration proceeding conducted, either in the County of New York, State of New York, or in the Hong Kong Special Administrative Region of the People's Republic of China, as the parties may agree, in the case of a proceeding in New York, to be administered by the American Arbitration Association under its Securities Arbitration Rules (the "AAA Rules"), before a panel of arbitrators chosen in accordance with the AAA Rules, in the case of a proceeding in Hong Kong, to be administered under such rules prevailing in Hong Kong as may be reasonably comparable in application and effect to the AAA Rules, and judgment on any award by the arbiters may be entered in any court having

- 4 -

JK

Jurisdiction thereof.  In the event Cornerstone elects that such proceeding take place in Hong Kong, or that Akin Bay elects that it take place in New York, New York, the prevailing party in such proceeding shall be entitled as part of any arbitral award to the reimbursement of its travel and other related expenses (but not its attorneys' fees) in connection therewith.

8.2    Cornerstone understands that this Agreement is being executed and delivered in the City of New York, State of New York, United States of America, is to be performed therein, and that the forum for the resolution of all disputes hereunder or in connection herewith not governed by Section 8.1 of this Agreement will be in New York, New York.  In furtherance of the foregoing, Cornerstone absolutely and unconditionally submits to the jurisdiction of the courts of the State of New York and of the courts of the United States located in the City of New York, State of New York for the purposes of any action or proceeding brought to enforce the provisions of Section 5 of this Agreement.

9.    GUARANTEE OF COIL; RELATIONSHIP WITH OTHER AGREEMENTS; MISCELLANOUS

9.1    COIL hereby guarantees to Akin Bay the due and punctual payment and performance by Cornerstone of all of Cornerstone's financial obligations under this Agreement in respect of: (a) the fees provided for in Section 3; and (b) the financial and other obligations of Cornerstone under Section 5 and Schedule I to this Agreement.  Notwithstanding the foregoing, however, COIL's foregoing obligations as guarantor shall not be primary, and Akin Bay shall first be required to demand that Cornerstone pay or perform such obligations, and only after Cornerstone has failed or refused, after notice, to pay or perform such obligations shall COIL become primary obligor to Akin Bay under this Guarantee.  The foregoing Guarantee is also subject to the provisions of Section 5 concerning Cornerstone's option to substitute a policy of insurance for its obligations under Section 5.  If Akin Bay accepts in writing such a policy of insurance, such acceptance shall also expressly relieve COIL of its obligations under this Guarantee in respect of Cornerstone's obligations under Section 5.

This Agreement represents the entire agreement between Akin Bay and Cornerstone with respect to the subject matter hereof and supersedes all previous discussions and negotiations had and all documents and memoranda exchanged between Akin Bay and either Cornerstone and/or COIL prior to the date hereof on the subject matter hereof.

9.2    The persons executing the Agreement on behalf of the respective parties represent and warrant that they have all necessary corporate power and authorization to sign and bind the parties they represent to the terms of this Agreement (including the terms of Schedule I hereto).

9.3    Any notice provided for herein shall be in writing and addressed to the respective parties at their addresses appearing on the first page of this Agreement and, unless specified to the contrary elsewhere herein, shall become effective (a) one (1) business day after transmission by facsimile or e-mail on a basis permitting verification of such transmission, or (b) two (2) business days after deposit with instructions for overnight delivery with any regularly scheduled courier delivery service, on a basis permitting verification of such delivery, or (c) seven (7) business days after deposit in the United States Post Office, first class air mail, certified, return receipt requested, postage pre-paid, or in the mails of the Hong King SAR, similarly transmitted.

9.4     This Agreement may be executed in counterparts, and by the different parties hereto on separate counterparts, and all such counterparts shall be considered one and the same instrument.

9.5     This Agreement is not assignable by either party hereto without the prior written consent of the other party, except that Cornerstone may assign its rights under this Agreement to any Affiliate of Cornerstone formed for the purpose of acquiring Wham-O, either by Stock Purchase or Asset Purchase; provided, however, that such assignment shall not relieve Cornerstone or COIL of any of their respective obligations hereunder unless Akin Bay otherwise consents in writing.  This Agreement shall be binding upon and inure to the benefit of the successors and valid assigns of the parties hereto.

9.7     The obligations of the parties to this Agreement shall not be affected, diminished or rendered void by any assignment in violation of the foregoing provisions, not shall any party to this Agreement be relieved, de jure or de facto, of its obligations hereunder by the transfer, assignment or sale of all or substantially all its assets, or the sale of substantially all its equity interest, or its merger with or into, a third party not nominally obligated hereunder.


SIGNED BY                                                )
For and on behalf of                                     )
**Cornerstone Strategic Management Limited**             )
In the presence of                                       )
                                                         )
                                                         )
                                                         )

_____            _____
Signature                                   Signature


_____            _____
Name and Title                              Hsieh Cheng Jeff, Chairman

SIGNED BY                                                )
For and on behalf of                                     )
**Cornerstone Overseas Investments Limited, solely in its capacity**
**as Guarantor under Section 9.1**                        )
In the presence of                                       )
                                                         )
                                                         )

_____            _____
Signature                                   Signature


_____            _____
Name and Title                              Hsieh Cheng Jeff, Chairman


- 6 -

SIGNED BY:

**Akin Bay Company LLC**
In the presence of

_____
Signature

_____
Name and title

_____
Signature

James B. Rybakoff, Present and CEO

SCHEDULE I

     This Schedule I is a part of and is incorporated into that certain agreement dated November 21, 2005 (the "Agreement") between Cornerstone Strategic Management Limited, a private company incorporated under the laws of the British Virgin Islands ("Cornerstone"), Cornerstone Overseas Investments Limited, a private company incorporated under the laws of the British Virgin Islands ("COIL"), solely in its capacity as Guarantor under Section 9.1 of the Agreement, and Akin Bay Company LLC ("Akin Bay"), a New York limited liability company, pursuant to which Akin Bay will perform certain services for Cornerstone.

     Cornerstone will indemnify and hold harmless Akin Bay and its partners, officers, agents and employees (Akin Bay and each such person being called herein an "indemnified person") from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "Liabilities"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "Expenses") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "Actions"), arising out of or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services to transactions; provided that Cornerstone will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction which is not longer subject to appeal or further review to have resulted solely from such Indemnified Person's gross negligence or intentional misconduct in connection with any of the advice, action, inactions or services referred to above.  Cornerstone also agrees to reimburse each Indemnified Person for all Expenses as they incurred in connection with enforcing such Indemnified Person's rights under the Agreement (including, without limitation, its rights under this Schedule 1).

     Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which Indemnity may be sought hereunder, such Indemnified Person shall promptly notify Cornerstone in writing: provided that failure so to notify Cornerstone shall not relieve Cornerstone from any liability which Cornerstone may have on account of this Indemnity or otherwise, except to the extent that Cornerstone may have been materially prejudiced by such failure.  Cornerstone shall, if requested by Akin Bay, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Akin Bay.  Any Indemnified Person shall have the right to employ separate counsel in such action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) Cornerstone has failed promptly to assume the defense in any such action and participate in the defense thereof or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and Cornerstone and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to Cornerstone.  Cornerstone shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld).

     Cornerstone also agrees that no Indemnified Person shall have liability (whether direct or indirect, in contact or tort or otherwise) to Cornerstone for or in connection with services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions to inaction in connection therewith except for Liabilities (and related Expenses) of Cornerstone that are determined by a judgment of a court of competent jurisdiction which is no longer subject to appeal or further review to have resulted from such Indemnified Person's gross negligence or intentional misconduct in connection with any such actions, inactions or services.

If any term, provision, covenant or restriction contained in this Schedule I is held by a court of competent jurisdiction or any authority to be invalid, void or unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenant and restrictions contained herein shall remain in full force effect and shall in no way be affected, impaired or invalidated.

The reimbursement, indemnity and Contribution of Cornerstone set forth herein shall apply to any modification of the Agreement, shall remain in full force and effect regardless of any expiration or termination of, or the completion of any Indemnified Person's service under or in connection with, the Agreement, shall be in addition to any liability Cornerstone may have to any Indemnified Person at common law or otherwise, and shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Person.

Exhibit B

# AKIN BAY COMPANY LLC

780 THIRD AVENUE
NEW YORK, NEW YORK 10017-2024

TELEPHONE:
(212) 583-9800
FACSIMILE:
(212) 583-1125
WWW.AKINBAY.COM

April 1, 2004

Cornerstone Overseas Investments, Limited
Room UG 202, Floor UG2
Chinachem Golden Plaza
77 Mody Road
Tsimshatsui East
Kowloon, Hong Kong

Attention of: Mr. Jeff Hsieh
Chairman

Dear Sirs:

This letter agreement sets out the terms on which Cornerstone Overseas Investments, Limited, a limited company organized under the laws of the British Virgin Islands ("Cornerstone" or the "Company"), has engaged Akin Bay Company LLC, a New York limited liability company and a member firm of The National Association of Securities Dealers Inc. ("Akin Bay"), as its financial adviser to provide the financial services outlined herein. As provided in Section Nine(a) of this Agreement, this Agreement supersedes to the extent provided in Section Nine(a) the financial advisory agreement between Akin Bay and Grand Toys International, Inc., a Nevada corporation ("Grand USA") dated December 12, 2003 (the "Predecessor Agreement").

### Section One: Objectives of the Company

The Company has requested Akin Bay to provide a broad range of financial advisory services for the Company, including but not limited to financial modeling for a range of potential corporate transactions, including but not limited to the acquisition of the stock or assets of other corporations or businesses (each such potential acquisition being referred to herein as a "Target"), the merger into or the acquisition by the Company, or a subsidiary or affiliate of the Company, of the capital stock or assets of an existing subsidiary or affiliate of the Company, valuation studies of a Target's business for the purpose of assisting in the determination of the form and value of the purchase offer to a Target, "due diligence" analysis of the business, operations and financial performance of a Target, negotiation with representatives of a Target on behalf of the Company of the terms of the acquisition of the Target, advice concerning the form, terms and conditions of any external debt or equity financing required by the Company or a subsidiary or affiliate of the Company to accomplish a merger or acquisition, advice with respect to the business and financial integration of a Target's business into the Company, and other like services.

### Section Two: Nature of the Engagement

Akin Bay will act, for a period beginning on the date of this Agreement and continuing until the date eighteen (18) months from the date of this Agreement (as such period may be extended as provided herein, the "Term"), as (a) the Company's exclusive agent and investment banker in any merger or acquisition transaction (a "Merger/ Acquisition") for the capital stock or

AKIN BAY COMPANY LLC
Cornerstone Overseas Investments, Limited
April 1, 2004

assets of any Target, excluding the following companies: (i) Kord Group Ltd. ("Kord") and (ii) New Adventures LLC ("New Adventures"); and (b) as the Company's exclusive financial advisor in all financings (a "Financing") of any Merger/Acquisition, or of the business generally of Cornerstone, Grand Toys International, Inc., a Nevada corporation ("Grand US"), Grand Toys International Ltd., a limited company organized under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Grand HK"), Playwell Industry Ltd., a limited company organized under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Playwell"), Toy Biz Worldwide Ltd., a limited company organized under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Toy Biz"), or any other subsidiary or affiliate of the Company or entity designated by the Company as a Target. The Company recognizes that: (1) in performing those services, Akin Bay will be using and relying upon such information concerning the Company or any Target as may be furnished to it or approved by the Company (collectively, the "Information"); (2) Akin Bay will not assume responsibility for the accuracy or completeness of the Information; and (3) Akin Bay will not undertake to verify the Information independently.

The Term of this Agreement shall be subject to extension: (a) upon mutual agreement, for one or more consecutive periods of 90 days, in the event a Merger/ Acquisition or Financing transaction approved by the Company has been initiated but not yet completed by the end of the Term, and (b) as provided in Section Six for Merger/ Acquisition or Financing transactions on which Akin Bay was working at the request of Cornerstone during the Term and which are completed, whether or not Akin Bay is involved in such transaction, subsequent to the expiration or earlier termination of the Term (or of any such extension thereof).

**Section Three: Conditions of the Engagement**

In consideration of the services to be provided by Akin Bay under this Agreement, the Company agrees to compensate Akin Bay as follows:

(a)     Upon the signing of the Predecessor Agreement, the Company caused to be paid to Akin Bay a fee in cash in the amount of US$75,000 (the "Initial Fee"), receipt of which is acknowledged hereby. The Initial Fee shall be 100% creditable against the amount of any Merger/Acquisition Fee provided for elsewhere in this Section Three.

(b)     From the date of the Predecessor Agreement, the Company caused to be paid to Akin Bay on the first day of each month after the date of the Predecessor Agreement a monthly fee in cash in the amount of US$ 12,500 (the "Monthly Fee"), including with the first such payment an amount equal to the Monthly Fee that would be due for the final month (or portion thereof) of the Term. Receipt of all Monthly Fees due prior to the date of this Agreement is acknowledged hereby. During the Term of this Agreement, the Company will continue to pay to Akin Bay on the first day of each month a Monthly Fee in cash for its continuing services under this Agreement in the amount of $12,500. All such Monthly Fees, including Monthly Fees received under the Predecessor Agreement, shall be 50% creditable against the amount of any Merger/ Acquisition Fee provided for elsewhere in this Section Three.

(c)     If the Company is successful in effecting during the Term any Merger/ Acquisition with a Transaction Value (as defined below) less that US$ 40.0 million, the Company shall pay Akin Bay on the date of the closing of the transaction, on a non-refundable basis (but subject to the crediting of the previously paid Initial Fee, Monthly

AKIN BAY COMPANY LLC
Cornerstone Overseas Investments, Limited
April 1, 2004

Fee, or Time and Materials Fees directly related to such Merger/ Acquisition), a fee in cash (a "Merger/ Acquisition Fee") in an amount equal to:

> (i)    1.8 per cent (1.8%) of the first US$ 15.0 million, plus
> (ii)   1.5 per cent (1.5%) of the balance,

of the Transaction Value (the "Transaction Value") of the consideration paid to effect such Merger/ Acquisition.  The Transaction Value of any component of the consideration paid for any Merger/ Acquisition shall be as follows:

> (A) for cash paid at closing (which shall include, for purposes of calculating a Merger/ Acquisition Fee, any amount designated to be held in escrow, without regard for the time value of money), the dollar amount of such cash;

> (B) for debt assumed or retired by the Company at closing as a component of the purchase price, the nominal dollar amount, or face value, of such debt; and

> (C) for any royalty payment, earn-out, contingent payment or similar obligation, the estimated total dollar amount of such payment from closing to the last date on which an obligation to make a payment in respect of such royalty payment, earn out, contingent payment or similar obligation can become fixed, discounted to present value at 20% per annum.

(d)     For all Merger/ Acquisition transactions greater than US$40.0 million in Transaction Value, the Company will pay to Akin Bay a Merger/ Acquisition Fee in cash in an amount determined as provided above in Section Three(C (ii)), and, in the case of any Merger/ Acquisition which Akin Bay and the Company agree required significant additional structuring, analytical, financial or other advisory services as a direct result of the size or complexity of such transaction, a fee in cash (a "Structuring Fee") in an amount equal to one half of one per cent (0.5%) of the Transaction Value of such Merger/ Acquisition, subject to the crediting of any previously paid Initial Fee, Monthly Fees, or Time and Materials Fees directly related to such transaction, as with Merger/ Acquisition transactions of less than US$40.0 million in Transaction Value.

(e)     If during the Term the Company is successful in effecting the acquisition of Kord or New Adventures and the Company has requested Akin Bay to provide some or all of the financial advisory services described in Section One for such transaction or other acquisitions, the Company shall pay to Akin Bay monthly prior to the closing and on the date of the closing of the transaction (subject to the crediting of the previously paid Initial Fee and Monthly Fees), a Time and Materials Fee at hourly rates for Akin Bay personnel in the amount of US$400 per hour for the time of Vice Presidents and above and US$300 per hour for the time of Associates.

(f)     In connection with all Financing transactions, whether for Cornerstone, Grand or another entity in the Cornerstone/ Grand group, the Company will pay to Akin Bay, monthly prior to the closing and on the date of the closing of such Financing, a Time and Materials Fee in cash, calculated at hourly rates for Akin Bay personnel in the amount of US$400 per hour for the time of Vice Presidents and above and US$300 per hour for the time of Associates.  Upon closing of any such Financing, Akin Bay will also be paid a fee (a "Financing Fee") in cash equal to the greater of:

AKIN BAY COMPANY LLC

Cornerstone Overseas Investments, Limited
April 1, 2004

    (i)    upon the closing of a Senior Debt Financing, a Financing Fee in the percentage set forth in the table below of the total amount available in accordance with the terms of such Financing (the "Total Amount"), without regard to the timing of receipt of the proceeds of such Financing by the Company,

| Total Amount of Senior Debt Financing | Financing Fee Percentage |
|---|---|
| 0-$50 million | 1% |
| $50-75 million | 1.1% |
| $75-100 million | 1.1875% |
| $100-125 million | 1.2% |
| $125-150 million | 1.25% |

    (ii)    upon the closing of a Subordinated Debt Financing with no equity component, a Financing Fee in the percentage set forth in the table below of the Total Amount of such Financing, without regard to the timing of receipt of the proceeds by the Company,

| Total Amount of Subordinated Debt Financing | Financing Fee Percentage |
|---|---|
| $0-50 million | 2.25% |
| $50-75 million | 2.5% |
| $75-100 million | 2.75% |
| $100 million + | 3.0% |

    (iii)    upon the closing of Subordinated Debt financing with an equity component, a Financing Fee in the percentage set forth in the table below of the Total Amount of such Financing, without regard to the timing of receipt of the proceeds by the Company,

| Amount of Subordinated Debt w/ Equity Financing | Financing Fee Percentage |
|---|---|
| $0-50 million | 3.25% |
| $50-75 million | 3.5% |
| $75-100 million | 3.75% |
| $100 million + | 4.0% |

    (iv)    upon the closing of any Convertible Preferred or other equity security Financing (excluding Subordinated Debt financing with an equity component), a Financing Fee in the percentage set forth in the table below of the investment commitments (the "Investment Commitments") by the investors participating in such Financing, without regard to the timing of receipt of the proceeds by the Company,

AKIN BAY COMPANY LLC

Cornerstone Overseas Investments, Limited
April 1, 2004

| Total Investment Commitments in Convertible Preferred Equity or Common Equity Financing | Financing Fee Percentage |
|---|---|
| $0-20 million | 3.85% |
| $20-40 million | 4.25% |
| $40-60 million | 4.5% |
| $60-80 million | 4.75% |
| $80-100 million + | 5.0% |

subject, in the case of each such Financing Fee, to the crediting against such Financing Fee of all Time and Materials Fees previously paid directly related to such Financing.

(g)     If during the Term the Company undertakes any underwritten public offering of the Company's equity securities, on either a primary or secondary basis, Akin Bay will act as the Company's exclusive financial advisor in connection with any such offering, and will be paid in cash, monthly prior to the closing and upon the closing of such underwritten offering, a Time and Materials Fee calculated at hourly rates for Akin Bay personnel in the amount of US$450 per hour for the time of Vice Presidents and above and US$350 per hour for the time of Associates. In connection with such underwritten offering, Akin Bay shall have the right to act as well as a co-underwriter and co-arranger of such offering, and in such capacity shall be entitled to receive customary underwriting commissions on the same basis as the other underwriters of such offering.

(h)     If during the Term the Company requests from Akin Bay any or all of the following financial advisory services: Market analysis, company positioning, press release policy and presentation, institutional investor presentations, strategic planning for enhancing market perception and stock price appreciation, or special negotiating services, the Company will pay to Akin Bay, monthly during the course of such matter and upon its conclusion, a Time and Materials Fee in cash calculated at hourly rates for Akin Bay personnel in the amount of US$400 per hour for the time of Vice Presidents and above and US$300 per hour for the time of Associates.

(i)     If during the Term Akin Bay recommends to the Company or any subsidiary or affiliate of the Company a Target for a Merger/ Acquisition which the Company has not previously considered, and thereafter the Company completes a Merger/ Acquisition transaction with such Target, Akin Bay shall receive at closing of such transaction, in addition to any other fees Akin Bay may be entitled to receive under other provisions of this Agreement, a fee in cash (an "Origination Fee") in an amount equal to one half of one per cent (0.5%) of the Transaction Value of such Merger/ Acquisition.

**Section Four: Expenses**

In addition to the fees payable to Akin Bay hereunder, the Company agrees to reimburse Akin Bay from time to time, promptly upon request, for all of Akin Bay's reasonable travel and other out-of-pocket expenses incurred in connection with the services rendered hereunder, plus any fees and expenses associated with any appropriate public announcements of the successful conclusion of any acquisition or financing transaction pursuant to this Agreement. Akin Bay

AKIN BAY COMPANY LLC
Cornerstone Overseas Investments, Limited
April 1, 2004

shall document all such expenses to the reasonable satisfaction of the Company and may, in the case of a significant out-of-pocket expense, require payment in advance of the time that such expense is incurred.

**Section Five: Indemnification**

The Company hereby (a) assumes the obligations of Grand USA under Section Five and Schedule I of the Predecessor Agreement, and (b) agrees to indemnify Akin Bay with respect to liabilities arising out of or in connection with the services rendered hereunder on the basis set forth in Schedule I attached hereto.

**Section Six: Termination of Engagement**

(a)     The engagement hereunder may be terminated by the Company or Akin Bay at any time, with cause, upon ten (10) days written notice to the other party; provided, however, that the provisions of Sections Four and Five shall survive any such termination; and provided, further, that Akin Bay shall, notwithstanding such termination, be entitled to so much of its fees and other compensation under Section Three hereof as shall have been earned or shall have become payable in accordance with the terms hereof, or of any separate agreement relating thereto, prior to such termination.

(b)     The engagement hereunder may be terminated by Akin Bay or the Company, without cause, at any time on not less than thirty (30) days advance written notice; provided, however, that the provisions of Sections Four and Five shall survive any such termination; that Akin Bay shall, despite such termination, be entitled to so much of its fees and other compensation under Section Three hereof as shall have been earned or shall have become payable in accordance with the terms hereof, or of any separate agreement relating thereto, prior to such termination; and provided, further, that Akin Bay shall be entitled to its full fees due under Section Three if at any time within twelve (12) months after such termination (i) the Company concludes any Merger/ Acquisition or Financing transaction of the type contemplated by this Agreement and (ii) the party or parties with whom such transaction or transactions occur is a person as to whom (A) the Company authorized Akin Bay to act as its agent, or (B) the Company authorized Akin Bay to enter into discussions with such person or persons for a Merger/ Acquisition or Financing transaction of the type contemplated by this Agreement, in each case prior to the termination of Akin Bay's engagement hereunder.  In any such instance the amount of any fee determined under Section Three and due pursuant to the preceding sentence shall be the same as if the transaction in respect of which that fee is due had occurred during the course of Akin Bay's engagement under this Agreement and as if Akin Bay had acted as the Company's exclusive agent in the negotiation and accomplishment of that transaction.

**Section Seven: Services for the Benefit of the Company Only; Confidentiality**

The Company understands and agrees that all advice (written or oral) given by Akin Bay to the Company in connection with the engagement hereunder is intended solely for the benefit and use of the Company, and that no such advice shall be used, reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose, nor shall any public reference be made to Akin Bay, except with Akin Bay's prior written consent.

AKIN BAY COMPANY LLC
Cornerstone Overseas Investments, Limited
April 1, 2004

All confidential information relating to the business, operations, financial position, intellectual property and otherwise of the Company and its shareholders, principals, members and affiliates (the "Confidential Information") disclosed to Akin Bay pursuant to or in connection with the transactions contemplated by this Agreement shall be treated by Akin Bay with such degree of care as routinely used by Akin Bay with respect to its own internal sensitive business and financial information of similar importance, and shall be used by Akin Bay only for the purposes of this Agreement, except to the extent that, with the approval of the Company, it is necessary that certain of such Confidential Information be incorporated in appropriate and necessary disclosures concerning the Company's business in connection with the matters undertaken by Akin Bay under Section One.

**Section Eight: Governing Law and Resolution of Disputes; Consent to Jurisdiction**

(a) This agreement shall be construed in accordance with and governed by the laws of the State of New York. Any disputes between the parties hereto arising out of or relating to this Agreement or the breach hereof shall be settled by an arbitration proceeding conducted in the County of New York, State of New York and administered by the American Arbitration Association under its Securities Arbitration Rules (the "AAA Rules"), before a panel of arbitrators chosen in accordance with the AAA Rules, and judgment on any award by the arbitrators may be entered in any court having jurisdiction thereof.

(b) The Company understands that this agreement is being executed and delivered in the City of New York, State of New York, United States of America, is to be performed therein, and that the forum for the resolution of all disputes hereunder or in connection herewith will be in New York, New York. In furtherance of the foregoing, the Company absolutely and unconditionally submits to the jurisdiction of the courts of the State of New York and of the courts of the United States located in the City of New York, State of New York for the purposes of any action or proceeding brought to enforce the provisions of this agreement.

**Section Nine: Relationship with Predecessor Agreement; Miscellaneous**

(a)    This Agreement supersedes to the extent provided in this Section Nine(a) the financial advisory agreement between Akin Bay and Grand Toys International, Inc., a Nevada corporation ("Grand USA") dated December 12, 2003 (the "Predecessor Agreement"). The Company is presently engaged in a pending corporate reorganization transaction with Grand (the "Grand Reorganization") pursuant to which, upon completion, Grand will be merged into Grand Toys International. Limited ("Grand HK"), a public company organized under the laws of the Hong Kong Special Administrative Region of the People's Republic of China, and majority owned by the Company, which will succeed to the business of Grand USA. Grand USA and Akin Bay previously entered into the Predecessor Agreement providing, in anticipation of the Grand Reorganization, for the provision by Akin Bay to the Company through Grand USA of substantially the same or similar corporate financial advisory services as described in this Agreement. This Agreement (i) acknowledges in Sections Three(a) and (b) receipt to the date of this Agreement by Akin Bay from Grand USA on behalf of the Company of certain fees provided for therein, (ii) provides in Section Five hereof and Schedule I hereto for the assumption by the Company of the obligations of Grand USA to indemnify Akin Bay from the date of the Predecessor Agreement in respect of certain liabilities described therein, and (iii) in all other respects, supersedes the Predecessor Agreement. Upon the execution and delivery of this Agreement by the Company to Akin Bay, Grand USA shall be considered released from all obligations to Akin Bay under the Predecessor Agreement.

□□                                    7

AKIN BAY COMPANY LLC

Cornerstone Overseas Investments, Limited
April 1, 2004

     (b)    This Agreement represents the entire agreement between the parties and supersedes in their entirety all previous discussions and negotiations had and all documents and memoranda exchanged between the parties prior to the date hereof on the subject matter hereof. The persons executing this Agreement on behalf of the respective parties represent and warrant that they have all necessary corporate power and authorization to sign and bind the parties they represent to the terms of this Agreement (including Schedule I hereto). Any notice provided for herein shall be in writing and addressed to the respective parties at their addresses appearing on the first page of this agreement and, unless specified to the contrary elsewhere herein, shall become effective (a) one (1) business day after transmission by facsimile or e-mail, on a basis permitting verification of such transmission, or (b) two (2) business days after delivery with instructions for overnight delivery to any regularly scheduled courier delivery service, on a basis permitting verification of such delivery, or (c) seven (7) business days after deposit in the United States Post Office, first class air mail, certified, return receipt requested.  This Agreement may be executed in counterparts, and by the different parties hereto on separate counterparts, and all such counterparts shall be considered one and the same instrument.  This Agreement is not assignable by either party hereto without the prior written consent of the other party.  This Agreement shall be binding upon and inure to the benefit of the successors and valid assigns of the parties hereto.  The obligations of the parties to this Agreement shall not be affected, diminished or rendered void by any assignment in violation of the foregoing provisions, nor shall any party to this Agreement be relieved, *de jure* or *de facto*, of its obligations hereunder by the transfer, assignment or sale of all or substantially all of its assets, or the sale of substantially all its equity interests, or its merger with or into, a third party not nominally obligated hereunder.

     Please confirm that the foregoing is in accordance with your understandings and agreements with Akin Bay by signing this letter and its counterpart enclosed and returning either copy to us.

             Very truly yours,

             **AKIN BAY COMPANY LLC**

             By_____
                James B. Rybakoff
                President and CEO

Accepted and agreed to this 1st day
of April 2004:

**CORNERSTONE OVERSEAS INVESTMENT, LIMITED**

By:_____
    Jeff Hsieh
    Chairman

AKIN BAY COMPANY LLC

Cornerstone Overseas Investments, Limited
April 1, 2004

**SCHEDULE I**

       This Schedule I is a part of and is incorporated into that certain letter agreement dated April 1, 2004 (the "Agreement") between Cornerstone Overseas Investments, Limited, a private company organized under the laws of the British Virgin Islands (the "Company"), and Akin Bay Company LLC ("Akin Bay"), a New York limited liability company, pursuant to which Akin Bay will perform certain services for the Company.  The Agreement supersedes an agreement dated December 12, 2003 between Grand Toys International, Inc., a Nevada corporation ("Grand"), and Akin Bay for the provision of substantially the same services as provided for herein (the "Predecessor Agreement").  The Company hereby assumes the obligations of Grand under Section Five of, and Schedule I to, such Predecessor Agreement.

       The Company will indemnify and hold harmless Akin Bay and its partners, officers, agents and employees (Akin Bay and each such person being called herein an "Indemnified Person") from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "Liabilities"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "Expenses") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "Actions"), arising out of or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions; provided that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction which is no longer subject to appeal or further review to have resulted solely from such Indemnified Person's gross negligence or intentional misconduct in connection with any of the advice, actions, inactions or services referred to above.  The Company also agrees to reimburse each Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Person's rights under the Agreement (including, without limitation, its rights under this Schedule I).

       Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought hereunder, such Indemnified Person shall promptly notify the Company in writing; provided that failure so to notify the Company shall not relieve the Company from any liability which the Company may have on account of this indemnity or otherwise, except to the extent that the Company may have been materially prejudiced by such failure.  The Company shall, if requested by Akin Bay, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Akin Bay.  Any Indemnified Person shall have the right to employ separate counsel in such action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) the Company has failed promptly to assume the defense in any such action and participate in the defense thereof or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the Company and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company.  The Company shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld).

       The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with

9

AKIN BAY COMPANY LLC

Cornerstone Overseas Investments, Limited
April 1, 2004

services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection therewith except for Liabilities (and related Expenses) of the Company that are determined by a judgment of a court of competent jurisdiction which is no longer subject to appeal or further review to have resulted from such Indemnified Person's gross negligence or intentional misconduct in connection with any such actions, inactions or services.

If any term, provision, covenant or restriction contained in this Schedule I is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of the Agreement, shall remain in full force and effect regardless of any expiration or termination of, or the completion of any Indemnified Person's services under or in connection with, the Agreement, shall be in additional to any liability the Company may have to any Indemnified Person at common law or otherwise, and shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Person.

# AKIN BAY COMPANY LLC

780 THIRD AVENUE
NEW YORK, NEW YORK 10017-2024

TELEPHONE:
(212) 583-9800
FACSIMILE:
(212) 583-1125
WWW.AKINBAY.COM

April 1, 2005

Cornerstone Overseas Investments, Limited
Room UG 202, Floor UG2
Chinachem Golden Plaza
77 Mody Road
Tsimshatsui East
Kowloon, Hong Kong

Attention of: Mr. Jeff Hsieh
             Chairman

Dear Sirs:

This letter is an amendment (the "Amendment") to the terms of that certain Agreement dated April 1, 2004 between Cornerstone Overseas Investments, Limited, a limited company organized under the laws of the British Virgin Islands ("Cornerstone" or the "Company"), and Akin Bay Company LLC, a New York limited liability company and a member firm of The National Association of Securities Dealers Inc. ("Akin Bay"). Under the Agreement, Cornerstone retained Akin Bay as its financial adviser to provide the financial services outlined therein. With respect to those portions of Section Three of the Agreement concerning the fees payable by Cornerstone to Akin Bay in respect of: (a) Merger and Acquisition services, and (b) debt placement and structuring services, this Amendment will evidence Cornerstone's and Akin Bay's mutual agreement that, rather than aggregates fees determined in accordance with the formulas set forth in Section Three of the Agreement, Cornerstone agrees to pay Akin Bay, and Akin Bay agrees to accept, in each case in full satisfaction of the amount(s) that would otherwise be due to Akin Bay under the Agreement concerning:(a) Akin Bay's services in respect of the acquisition by Cornerstone of all of the capital in Vivid Toys & Games Group Limited (the "Vivid Merger"), and (b) Akin Bay's services in connection with arranging the financing of the Vivid Merger and associated costs by The Royal Bank of Scotland plc (the "RBS Financing"), a flat fee in the amount of US$15.0 million (the "Alternate Fee"). The Alternate Fee will be paid at the closing of the Vivid Merger and the RBS Financing, and Cornerstone will arrange that the funding source will wire the entire Alternate Fee to Akin Bay's bank account at the closing meeting.

Except as amended hereby, the Agreement is ratified and confirmed as in full force and effect. Please confirm that the foregoing is in accordance with your understandings and agreements with Akin Bay by signing this letter and its counterpart enclosed and returning either copy to us.

Very truly yours,

AKIN BAY COMPANY LLC

By _____
     James B. Rybakoff
     President and CEO

Accepted and agreed to this ___ day
of April 2005:

CORNERSTONE OVERSEAS INVESTMENTS, LIMITED

By: _____
     Jeff Hsieh
     Chairman and CEO

Exhibit C

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**

---

AKIN BAY COMPANY LLC

Claimant,

      and

                                Case No. 50 435 T 00214 06

CORNERSTONE OVERSEAS INVESTMENT
LIMITED and CORNERSTONE STRATEGIC
MANAGEMENT LIMITED,

Respondents.

---

## <u>INTERIM AWARD</u>

By letter dated February 21, 2007, Akin Bay Company LLC ("Akin Bay"
or "the Claimant") applied for an order compelling the Respondents
(hereinafter, sometimes referred to collectively as "Cornerstone") to pay Akin
Bay's legal expenses, including its costs and attorney's fees, "as they are
incurred" in the course of this arbitration. The Claimant's right to the payment of
these fees and expenses is said to arise out of Schedule I to the letter
agreement dated April 1, 2004. That letter agreement underlies Akin Bay's claims
for compensation in this arbitration.

Schedule I, which forms part of the parties' agreement for Akin Bay's
services, is an indemnification in which Cornerstone indemnifies Akin Bay for
expenses incurred if certain contingencies arise. The second paragraph of

1

Schedule I is particularly relevant to the instant application. It recites (emphasis added):

> The Company [Cornerstone] will indemnify and hold harmless Akin Bay and its partners, officers, agents and employees( . . .called herein an "Indemnified Person") from and against any losses, claims, damages . . . . (collectively, "Liabilities"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "Expenses") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "Actions"), arising out of or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, . . . provided that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person [if such Indemnified Person is found by a court to have been grossly negligent or engaged in intentional misconduct]. *The Company also agrees to reimburse each Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Person's rights under the Agreement (including, without limitation, its rights under this Schedule I.)*

The third paragraph of Schedule I that immediately follows the paragraph quoted above, provides in pertinent part:

> Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought hereunder, such Indemnified Person shall promptly notify the Company in writing. . . . The Company shall, if requested by Akin Bay, assume the defense of any such Action . . .

Akin Bay contends that the paragraph of Schedule I first quoted above, and particularly the italicized sentence, require the Respondents to pay the Claimant's fees "as they are incurred", *i.e.* as the arbitration progresses. The Respondents on the other hand contend that the indemnification set forth in Schedule I relates solely to third party claims and cannot be construed to compel the Respondents to finance an arbitration that Akin Bay brings against them, especially prior to any finding by an arbitrator that monies are even due under the parties' agreement.

In support of its position, Cornerstone cites two cases: *Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 548 N.E.2d 903 (1989)* (hereinafter, *Hooper*) and *Oscar Gruss & Sons, Inc. v. Hollander, 337 F.3d 186 (2d Cir. 2003)* (hereinafter, *Hollander*). Both *Hooper* and *Hollander* rejected an attempt by each plaintiff in those cases to recoup the legal expenses that it incurred in successfully asserting its contract claims against the indemnitor.

In the *Hooper* case, the pertinent indemnification provision called for the reimbursement of the plaintiff's expenses, including counsel fees, when the claim arose out of: (i) any breach of warranty by the seller; (ii) the performance of any services under the contract; (iii) the infringement of any patent rights related to the equipment that was sold; (iv) the installation, operation or maintenance of the equipment; or (v) any mechanic's liens for labor and materials. The Court of

Appeals reasoned that these all related to potential third party claims against the plaintiff and not to claims that the plaintiff might bring directly against the defendant on the underlying contract. In denying counsel fees to the plaintiff, the Court of Appeals explained:

> Inasmuch as a promise by one party to a contract to indemnify the other for attorneys fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

*Hooper, supra., 74 N.Y.2d at 492.*

Later in the opinion the Court expanded on the standard as follows:

> All these subjects [of the indemnification language in the contract in *Hooper* ] are susceptible to third party claims . . . None are exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnity plaintiff for counsel fees in an action on the contract.

*Id.*

Citing the "unmistakably clear" standard articulated in *Hooper*, the Second Circuit in *Hollander* denied the reimbursement of counsel fees to a litigant who similarly sued to enforce it rights against the other contracting party. In *Hollander*, the indemnification clause provided that Hollander would reimburse the plaintiff for expenses, including legal fees:

> arising in any manner out of or in connection with

> the rendering of services by the Advisor hereunder
> (*including, without limitation, in connection with
> the enforcement of this Agreement* and the indemni-
> fication obligations set forth herein).

*Hollander, supra., 337 F. 3d at 199* (emphasis in original).

The additional issue in *Hollander* was whether the "enforcement of this Agreement" language made it unmistakably clear that the indemnitee in that case was entitled to its fees in an action on the contract against the indemnitor. In denying the plaintiff its attorney's fees under that indemnification language, the Second Circuit emphasized two things: First, the "enforcement of this Agreement" language was not inconsistent with the conclusion that the clause was meant to apply only to third party claims. Second, the *Hollander* court pointed to the notice language in the indemnification agreement and concluded that the notice requirement would make no sense if the parties had intended to extend the indemnity to direct claims by the plaintiff against the indemnitor on the contract.

Akin Bay distinguishes *Hooper* and *Hollander* by arguing that the indemnification provisions in Schedule I of its agreement are different. Akin Bay argues that the indemnification language in its agreement with Cornerstone makes it unmistakably clear that the Claimant is entitled to its attorney's fee as this arbitration progresses. At the least, says the Claimant, the language of its indemnification provision "support[s] an inference that [Cornerstone] promised to indemnify [Akin Bay] for counsel fees in an action on the contract." *Hooper, supra., at p. 492.*

5

After carefully reviewing the written submissions of the parties and the pertinent cases, and after hearing oral argument, the undersigned agrees with Akin Bay's interpretation of the indemnification language in Schedule I of the contract.

At first glance the language of Akin Bay's indemnification appears to be quite close to the language of the indemnification in *Hollander*. On closer examination, however, some key differences distinguish these provisions. First, the indemnification language in the Akin Bay-Cornerstone contract is expressed in two separate sentences. The first sentence of the second paragraph of the indemnification (quoted above) clearly provides for an indemnification of third party claims. There then appears a separate sentence (italicized in the quotation above). That second sentence, if read without the parenthetical phrase "(including, without limitation, its rights under this Schedule I)" could also be read—like the indemnification in *Hollander*—  as extending to third party claims. However, when the parenthetical phrase is added, the meaning becomes apparent. Assuming that the parenthetical phrase is not surplus language (and one must strive to read a contract to give meaning to all of its provisions), it can only *add* to the scope of the indemnification language that precedes it. There is no other circumstance to which the parenthetical language can refer except for the situation in which Akin Bay arbitrates or litigates against Cornerstone to collect monies due to it under its contract.

6

In addition, unlike in *Hooper* and *Hollander*, the "notice" language in the third paragraph of the indemnification in this case still makes perfect sense if the parenthetical language is read to require the reimbursement of Akin Bay's legal expenses in this arbitration "as they are incurred." The notice provision only relates to an "Action". "Action" is a defined term in the *first sentence* of the second paragraph. That sentence only relates to third party claims. Moreover, notice is only required of an "Action against [an] Indemnified Person." An "Indemnified Person" is also defined in the first sentence of the second paragraph as Akin Bay or any of its officer, directors, etc. Thus, notice is required only for "Actions" (*i.e.* third party claims) "against" Akin Bay. The notice provision is, therefore, consistent with a reading of the indemnification that requires the payment of Akin Bay's fees pursuant to the *second sentence* of the second paragraph.

### Relief Granted

For the reasons set forth above, Akin Bay's application is GRANTED and the Respondents are ORDERED to reimburse Akin Bay's reasonable counsel fees as this arbitration proceeds. If a dispute arises as to the frequency of such reimbursements, or their amounts, either party may apply to the arbitrator for a prompt ruling.

A final fee will be set in the final Award rendered in this arbitration. The amount of such fee will consider the identity of the prevailing party, the work

7

done, the results achieved, and the *bona fides* of the claims asserted. The arbitrator reserves the right to set a final fee that might require a disgorgement of fees previously advanced to Akin Bay if circumstances so warrant.


Dated: New York, NY
        April 20, 2007


*Robert B. Davidson*
Robert B. Davidson, Arbitrator

8

Exhibit D

 # International Centre for Dispute Resolution

# FAX

Thomas M. Ventrone, Esq.
*Vice President*
*International Centre for Dispute Resolution*
1633 Broadway, New York, NY 10019-6708
telephone 212 484 3299, facsimile 212 246 7274

| | | |
|---|---|---|
| DATE | July 16, 2007 | |
| To | K. Ann McDonald, Esq.<br>Steven C. Nelson, Esq.<br>David C. Singer, Esq.<br>Robert B. Davidson, Esq. | FAX NUMBER  1-212-953-3690<br>011 852-2524-3000<br>1-212-953-7201<br>1-212-972-0027 |
| FROM | Andrea H. Bugbee<br>ICDR Senior Case Manager | |
| NUMBER OF PAGES | 6    (Including Fax Cover Sheet) | |
| RE | *50 435 T 00214 06*<br>*Akin Bay Company, LLC*<br>*vs*<br>*Cornerstone Overseas Investment Limited*<br>*Cornerstone Strategic Management Limited* | |
| CC | | |
| MESSAGE | Dear Counsel and Mr. Davidson: | |

Please see the attached. Thank you.

Kind Regards,

Andrea

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

 **International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

July 16, 2007

**VIA FACSIMILE ONLY**

K. Ann McDonald, Esq.
Robinson Murphy & McDonald
61 Broadway, Suite 1415
New York, NY  10006

Steven C. Nelson, Esq.
Dorsey & Whitney
88 Queensway, Suite 3008
One Pacific Place
Hong Kong China

Re: 50 435 T 00214 06
    Akin Bay Company LLC
    vs
    Cornerstone Overseas Investment Limited
    and Cornerstone Strategic Management Limited

Dear Counsel:

Attached, please find a copy of the *Decision on Scope of Indemnification Under Wham-O Agreement*
dated July 13, 2007 and as signed by Mr. Davidson.

Please contact the undersigned, should you have any questions.

Very truly yours,

Andrea H. Bugbee
Senior International Case Manager
(212) 484-3299
BugbeeA@adr.org

cc: Robert B. Davidson, Esq.

Encl.

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

AKIN BAY COMPANY LLC

    Claimant,

      and

                     Case No. 50 435 T 00214 06

CORNERSTONE OVERSEAS INVESTMENT
LIMITED and CORNERSTONE STRATEGIC
MANAGEMENT LIMITED,

    Respondents.

### DECISION ON SCOPE OF INDEMNIFICATION
### UNDER WHAM-O AGREEMENT

By Interim Award dated April 20, 2007, the undersigned determined that, under Schedule I of the letter agreement dated April 1, 2004 between Respondent Cornerstone Overseas Investments, Limited ("COIL") and the Claimant ("Akin Bay") (hereinafter, the "COIL Agreement"), Akin Bay was entitled to payment of its counsel fees "as they are incurred", *i.e.,* as the arbitration progresses. The COIL Agreement, however, is but one of two contracts involved in this arbitration. The second agreement is dated November 21, 2005 and is between Respondent Cornerstone Strategic Management Limited ("Cornerstone") and Akin Bay (hereinafter, the "Wham-O Agreement"). Akin Bay now applies for payment of its counsel fees "as they are incurred" in connection with the enforcement of its rights under the Wham-O Agreement. Cornerstone contests Akin Bay's application and contends that Akin Bay is not entitled to this relief under Schedule I of that contract.

1

The operative language of the indemnification language in Schedule I to the Wham-O Agreement is substantially identical to the language in Schedule I to the COIL Agreement. Cornerstone, however, objects to paying Akin Bay's fees for prosecuting claims under the Wham-O Agreement arguing that additional provisions contained in the Wham-O Agreement evidence the parties' intention that Akin Bay not receive reimbursement of its counsel fees "as they are incurred" with respect to the Wham-O portion of the arbitration.

There are two differences in the agreements upon which Cornerstone relies. First, unlike in the COIL Agreement, disputes between the parties under the Wham-O Agreement are to be litigated rather than arbitrated. Second, Section 5 of the Wham-O Agreement permits Cornerstone to tender an insurance policy to Akin Bay which, if accepted, would substitute for Cornerstone's indemnification obligations under Schedule I. No such provision appears in the COIL Agreement.

Cornerstone argues that these different provisions compel the conclusion that Akin Bay is not entitled to its fees as they are incurred for enforcing its rights in this arbitration under the Wham-O Agreement.

After reading the parties' submissions and reviewing the Wham-O Agreement and its Schedule I, the undersigned concludes that the differences that appear in the Wham-O Agreement do not result in a different interpretation of Cornerstone's indemnification obligations. Accordingly, Cornerstone is to reimburse Akin Bay's counsel fees "as they

2

are incurred" in Akin Bay's prosecution of its claims under the Wham-O Agreement to the same extent, and subject to the same conditions and qualifications, as those set forth in the Interim Award relating to the COIL Agreement.

It is true that a provision providing for litigation as opposed to arbitration implies a slower and more technical process, but preliminary relief is theoretically available in the context of a state court proceeding if, for example, Akin Bay felt aggrieved by an inordinate delay in receiving a decision on the payment of its fees. Neither does the possibility of Cornerstone's covering its indemnification obligations with insurance compel a different conclusion. The Wham-O Agreement recites a 90-day term, with possible extensions, and it is quite conceivable—perhaps even likely—that Akin Bay's work on the Wham-O assignment would be completed and fully paid for prior to the assertion of a third-party claim. While an insurance policy would not likely be available to cover Cornerstone's obligations to pay the fees of Akin Bay in the event of a dispute over the underlying agreement, the insurance alternative in Section 5 is optional and not mandatory. Hence, the inference is that the parties understood that it might not be an option under all the circumstances. Further, the insurance policy can be obtained "[a]t any time after the date of [the Wham-O] Agreement." Thus, a policy might well be procured after Akin Bay's assignment has concluded and Akin Bay has been fully compensated. The mere existence of the insurance alternative is, therefore, insufficient to override the clear language in Schedule I.

3

For the reasons set forth above, Akin Bay's application is GRANTED and the Respondents are ORDERED to reimburse Akin Bay's reasonable counsel fees for the prosecution of its claims under the Wham-O Agreement as this arbitration proceeds. If a dispute arises as to the frequency of such reimbursements, or their amounts, either party may apply to the arbitrator for a prompt ruling.

A final fee will be set in the final Award rendered in this arbitration. The amount of such fee will consider the identity of the prevailing party, the work done, the results achieved, and the *bona fides* of the claims asserted. The arbitrator reserves the right to set a final fee that might require a disgorgement of fees previously advanced to Akin Bay if circumstances so warrant.

Dated: New York, NY
       July 13, 2007

*Robert B. Davidson* SO
Robert B. Davidson, Arbitrator

4